1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11   DONG LIU; YUHONG HUANG,                              CASE NO. 07CV0005 BEN (WMC)

12                                       Plaintiffs,        ORDER GRANTING MOTION TO
                                                            DISMISS WITHOUT PREJUDICE
               v.

13

14   MICHAEL CHERTOFF, Secretary of U.S.
     Department of Homeland Security; ROBERT
15   S. MUELLER; Director of Federal Bureau of
     Investigation;  EMILIO GONZALES,
16   Director of U.S. Citizenship and Immigration
     Services; and CHRISTINA POULOS, Acting
17   Director, California Service Center, U.S.
     Citizenship and Immigration Services,

18                                       Defendants.

19

20        On January 9, 2007, pro se plaintiffs Dong Liu and Yuhong Huang ("Plaintiffs") filed a

21   complaint seeking to have defendants Michael Chertoff, Secretary of the Department of Homeland

22   Security ("DHS"), Robert Mueller, Director of the Federal Bureau of Investigation ("FBI"),

23   Emilio Gonzalez, Director of United States Citizen and Immigration Services ("USCIS"), and

24   Christina Poulos, Acting Director, California Service Center, U.S. Citizenship and Immigration

25   Services ("CSC") (collectively "Defendants") properly adjudicate Plaintiffs' I-485 applications to

26   register permanent residence or adjust status.  (Doc. No. 1.)  Presently before the Court is

27   defendants' motion to dismiss.  (Doc. No. 5.)  For the following reasons, the Court **GRANTS**

28   **WITHOUT PREJUDICE** Defendants' motion.

1

### I.   BACKGROUND

2

3   A.      Factual Background

4           Plaintiffs are natives and citizens of China.  (Compl.¶ 2.)  On July 22, 2004, Plaintiffs each

5   filed I-485 applications to register permanent residence or adjust status with USCIS.[1]  *Id.*  After

6   filing their adjustment applications, Plaintiffs made multiple inquires of Defendants seeking

7   information regarding the status of their respective applications.  (*Id.* ¶ 13.)  Plaintiffs also sought

8   assistance from their United States Senator and local Congressional representative.  (*Id.* ¶ 12.)  In

9   the course of Plaintiffs' correspondence with USCIS, Plaintiffs learned that their FBI name check

10  results (one of the necessary investigative steps in processing Plaintiffs' applications) were still

11  pending.  (*Id.* ¶ 13.)  Plaintiffs allege that the required FBI checks have been pending for over two

12  years and that Defendants have failed to process the applications towards final adjudication.  *Id.*

13  Plaintiffs request this Court: 1) order the FBI to expedite the background investigations; and 2)

14  order the CSC to adjudicate their applications.   (*Id.* ¶ 17.)

15  B.      Procedural Background

16          On January 9, 2007, Plaintiffs filed a complaint seeking to have Defendants properly

17  adjudicate their I-485 applications to register permanent residence or adjust status.  (Doc. No. 1.)

18  On March 20, 2007, Defendants filed their motion to dismiss.  (Doc. No. 5.)  On April 10, 2007,

19  Plaintiffs filed their opposition.  (Doc. No. 8.)  On April 17, 2007, Defendants filed a reply. (Doc.

20  No. 9.)  The matter is now fully briefed, and the Court finds it appropriate for disposition without

21  oral argument pursuant to Civil Local Rule 7.1(d)(1).

22

23                            ### II.   DISCUSSION

24  A.      Legal Standard

25          Defendants have moved to dismiss Plaintiffs' entire suit against them under Rule 12(b)(1)

26  of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, and under Rule

27

28          [1] Plaintiff Dong Liu also filed a Form I-140 (immigration petition for alien worker), which
was approved on March 31, 2005.

1    12(b)(6) for failure to state a claim upon which relief can be granted.

2          A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court over the

3    subject matter of the complaint. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited

4    jurisdiction and possess 'only that power authorized by Constitution and statute.'" *Sandpiper*

5    *Village Condominium Ass'n., Inc. v. Louisiana-Pacific Corp*., 428 F.3d 831, 841 (9th Cir. 2005).

6    Limits upon federal jurisdiction must not be disregarded or evaded. *See Owen Equipment &*

7    *Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack

8    jurisdiction in a particular case unless the contrary affirmatively appears." *A-Z Intern. v. Phillips*,

9    323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotation and citation omitted). It is the burden of

10    plaintiffs to persuade the Court that subject matter jurisdiction exists. *See Hexom v. Oregon Dept.*

11    *of Transp*., 177 F.3d 1134, 1135 (9th Cir. 1999).

12          A motion to dismiss for lack of subject matter jurisdiction may be "facial" or "factual."

13    *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) *cert. denied* 544 U.S.

14    1018 (2005). A facial attack challenges the sufficiency of the jurisdictional allegations in the

15    complaint. *See Id.* In contrast, a factual attack challenges the substance of a complaint's

16    jurisdictional allegations. *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989). If the

17    defendant brings a facial attack, a district court must assume that the factual allegations in the

18    complaint are true and construe them in the light most favorable to the plaintiff. *See Love v.*

19    *United States,* 915 F.2d 1242, 1245 (9th Cir.1990). A Rule 12(b)(1) motion will be granted if, on

20    its face, the complaint fails to allege grounds for federal subject matter jurisdiction as required by

21    Rule 8(a) of the Federal Rules of Civil Procedure. *See Warren v. Fox Family Worldwide, Inc*. 328

22    F.3d 1136, 1139 (9th Cir.2003).

23          A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims

24    asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *See Navarro v. Block*, 250 F.3d 729, 731 (9th

25    Cir. 2001). Rule 12(b)(6) permits dismissal of a claim when the claim lacks a cognizable legal

26    theory or there are insufficient facts alleged to support plaintiff's theory. *See Balistreri v. Pacifica*

27    *Police Dept*., 901 F.2d 696, 699 (9th Cir.1990). In considering the sufficiency of a complaint

28    under Rule 12(b)(6), courts cannot grant a motion to dismiss "unless it appears beyond doubt that

1   the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

2   *(citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In resolving a Rule 12(b)(6) motion, the

3   court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all

4   well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of

5   facts to support a claim that would merit relief.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

6   337-38 (9th Cir.1996).  If a complaint is found to fail to state a claim, the court should grant leave

7   to amend unless it determines that the pleading could not possibly be cured by the allegation of

8   other facts.  *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995).

9        The Court recognizes the mandate to construe a pro se plaintiff's pleadings liberally in

10  determining whether a claim has been stated.  *See Ortez v. Washington County, State of Oregon*,

11  88 F.3d 804, 807 (9th Cir. 1996).

12  B.    Analysis

13       Plaintiff asserts three statutory bases for subject matter jurisdiction: 1) mandamus

14  jurisdiction pursuant to 28 U.S.C. § 1361;  2) the Administrative Procedure Act, 5 U.S.C. § 701 *et*

15  *seq*. ("APA");  and 3) the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. ("DJA").  (Compl.

16  ¶ 7.)  Defendants, on the other hand, maintain that none of these statutes vest the court with subject

17  matter jurisdiction in this case.

18       1.    Mandamus Jurisdiction

19       Defendants argue that § 1361 does not provide subject matter jurisdiction over USCIS's

20  adjudication of Plaintiffs' I-485 applications because USCIS's duty is discretionary.  Title 28

21  U.S.C. § 1361 states that the District courts have original jurisdiction over "any action in the

22  nature of mandamus to compel an officer or employee of the United States or any agency thereof

23  to perform a duty owed to a plaintiff."  A writ of mandamus is an extraordinary remedy and is

24  available where: (1) the individual's claim is clear and certain;  (2) the official's duty is

25  nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt;  and (3) no other

26  adequate remedy is available.  *See Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir.2003);  *see also*

27  *Wilmot v. Doyle*, 403 F.2d 811, 816 (9th Cir. 1968) ("Mandamus will lie only to compel

28  ministerial duty plainly defined by law and not to compel an exercise of discretion.").  Nor may

1   mandamus be used to instruct an official how to exercise his or her discretion.  *See Wilmot v.*

2   *Doyle*, 403 F.2d 811, 816 (9th Cir. 1968).  Furthermore, the district court has discretion to not

3   issue a writ of mandamus even where the prerequisites have been satisfied.  *See San Jose Mercury*

4   *News, Inc. v. United States District Court,* 187 F. 3d 1096, 1099 (9th Cir. 1999).

5          Plaintiffs' filed their I-485 applications pursuant to § 245 of the Immigration and

6   Nationality Act ("INA"),  8 U.S.C. § 1255.  The statute states in relevant part:

7          The status of an alien . . . may be adjusted by the Attorney General, in his discretion
           and under such regulations as he may prescribe, to that of an alien lawfully
8          admitted for permanent residence if (1) the alien makes an application for such
           adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to
9          the United States for permanent residence, and (3) an immigrant visa is
           immediately available to him at the time his application is filed.
10
    8 U.S.C. § 1255(a).  The Court, however, is limited in its review of discretionary decisions or
11
    actions of USCIS regarding I-485 applications pursuant to section 242 of the INA.  The statute
12
    states in relevant part:
13
           Notwithstanding any other provision of law (statutory or nonstatutory), including. .
14         . section[ ] 1361  . . . no court shall have jurisdiction to review--
           (i) any judgment regarding the granting of relief under section . . . 1255 of this title,
15         or
           (ii) any other decision or action of the Attorney General or the Secretary of
16         Homeland Security the authority for which is specified under this subchapter to be
           in the discretion of the Attorney General or the Secretary of Homeland Security,
17         other than the granting of relief under section 1158(a) of this title.

18   8 U.S.C. § 1252(a)(2)(B)(ii).  These statutes taken together illustrate Congress' intent to preclude

19   the courts from reviewing discretionary decisions or actions of the USCIS to include I-485

20   applications.

21          Defendants argue that their discretion also extends to the pace of adjudicating Plaintiffs'

22   applications.  In furtherance of their position, Defendants note the absence of any statutes or

23   regulations which limit the time the Department of Homeland Security, the Attorney General, or

24   the FBI must act in adjudicating an I-485  application.  *See* 8 C.F.R. § 245 *et seq*.;  *Compare* 8

25   U.S.C. § 1447(b) (requiring USCIS to make a determination on a naturalization application within

26   120 days after it conducts a naturalization examination).  Plaintiffs maintain, however, that

27   Defendants' discretion extends only to the *final* determination of their applications.  Plaintiffs

28   argue that Defendants duty to "process the application[s] within a reasonable time" is non-

1   discretionary.  (Pls. Opp'n at 5.)

2        Defendants have provided the declaration of Wendy S. Clark, the Acting Assistant Center

3   Director with the USCIS' CSC.  (Decl. Wendy S. Clark, ISO Defs. Mot. Dismiss. Ex. A, hereafter,

4   "Clark Decl.")  Ms. Clark attests that she has reviewed the records regarding Plaintiff Dong Liu's

5   I-485 application, and that to date, required security checks have yet to be completed, preventing

6   USCIS from adjudicating Plaintiffs' applications.  (Clark Decl. ¶ 14.)  While the security checks

7   have been completed for Plaintiff Yuhong Huang, she is an accompanying spouse and not

8   otherwise entitled to an immigrant status or immigrant visa under 8 U.S.C. § 1153(d);  therefore,

9   her application cannot be adjudicated independently.  *Id.*  Both applications will be adjudicated

10  once the required security checks are completed for Plaintiff Dong Liu. *Id.*

11        Before a decision is rendered on an alien's application to adjust status, USCIS (in

12  conjunction with the FBI) conducts several forms of security and background checks to ensure that

13  the alien is eligible for the benefit sought and that he or she does not pose a risk to national

14  security or public safety.  (*Id*. ¶¶ 3-4.)  These checks enhance national security and ensure the

15  integrity of the immigration process by screening out aliens who may seek to harm the United

16  States and its citizens.  *Id.*  These checks include: 1) an FBI name check that is run against FBI

17  investigative databases, which is compiled by law enforcement agencies and includes

18  administrative, applicant, criminal, personnel, and other files;  2) an FBI fingerprint check that

19  provides information regarding an applicant's criminal background within the United States;  and

20  3) a check against the Interagency Border Inspection System, which contains records and

21  information from over 20 federal law enforcement and intelligence agencies that is used *inter alia*

22  to compile information regarding national security risks, public safety concerns, and other law

23  enforcement concerns.  (*Id*. ¶ 4; USCIS Fact Sheet, ISO Defs. Mot. Dismiss. Ex. 1 at 2, hereafter,

24  "USCIS Fact Sheet.")

25        The CSC receives approximately 5000 I-485 applications monthly and currently has 30,000

26  I-485 applications awaiting adjudication.  (Clark Decl. ¶ 6.)  Ms. Clark explains that sometimes a

27  lengthy delay is unavoidable because the security check may reveal derogatory information on the

28  subject alien.  (*Id*. ¶ 10.)  That derogatory information is sometimes possessed by another

1   government agency and the substance of that information is not always revealed. *Id.* Even after

2   all of the known information from government agencies is collected, further investigation may still

3   be required. *Id.*

4         Ms. Clark also explains that aliens who have applied for adjustment of status may apply for

5   and obtain employment authorizations for the entire time their application is pending. (*Id.* ¶ 13.)

6   Applicants for adjustment of status can also apply for and obtain advance parole to enable them to

7   travel abroad during the pendency of their applications. *Id.*

8         The federal courts have recently become inundated with naturalization actions seeking

9   declaratory relief as is the case here. Some district courts have determined that the pace at which

10  USCIS adjudicates I-485 applications is discretionary. Accordingly, district courts should not

11  consider whether USCIS is adjudicating I-485 applications at a reasonable pace under § 1361.

12  *See, e.g., Grinberg v. Swacina*, __ F.Supp.2d __ 2007 WL 840109, at *1 (S.D. Fla. 2007) (holding

13  that sections 242 and 245 of the INA preclude judicial review of any discretionary "decision or

14  action" of the Attorney General in immigration matters including the pace at which immigration

15  decisions are made.); *Safadi v. Howard*, 466 F.Supp.2d 696, 698-700 (E.D. Va.2006) (finding no

16  jurisdiction under § 1361 because § 1255(a) grants USCIS discretion over the entire process of

17  adjustment application adjudication and § 1252(a)(2)(B)(ii) precludes judicial review of any

18  "action," meaning any act or series of acts, to include the pace at which that action proceeds);

19  *Mustafa v. Pasquerell*, 2006 WL 488399 at *4 (concluding that the proper focus is whether

20  Plaintiffs have a clear right to an immediate or expedited adjudication of their petition and

21  application; if the timing of the relief sought is a matter within the discretion of the agency, there is

22  no clear right to relief.); *Li v. Chertoff* , __F.Supp.2d ___ *5 (S.D. Cal. 2007) (concluding that as

23  long as USCIS is making reasonable efforts to complete the adjudication, the pace required to

24  complete that process is committed to their discretion.).

25        Other district courts' decisions have fallen on the other end of the spectrum with opposite

26  conclusions. These courts allege that USCIS failed to adjudicate immigration applications within

27  a reasonable period of time and have found jurisdiction to hear a mandamus suit because to hold

28  otherwise would allow USCIS to potentially delay adjudicating immigration applications

1   indefinitely.  *See, e.g., Gelfer v. Chertoff,* WL 902382 \*2 (N.D. Cal. Mar. 22, 2007) ("Allowing

2   the respondents a limitless amount of time to adjudicate petitioner's [I-485] application would be

3   contrary to the 'reasonable time' frame mandated under 5 U.S.C. 555(b) and, ultimately, could

4   negate the USCIS's duty under 8 C.F.R. 245.2(a) (5)");  *See Singh v. Still,* 470 F.Supp.2d 1064,

5   1068 (N.D. Cal. 2007) ("petitioners whose applications for adjustment in status are properly before

6   the INS ... have a right, enforceable through a writ of mandamus, to have the applications

7   processed within a reasonable time.").

8           Without any Ninth Circuit law addressing the immigration issue presented here, this Court

9   elects to follow the majority of courts that have dismissed similar actions for lack of subject matter

10  jurisdiction.  As long as USCIS continues to make reasonable efforts to complete Plaintiffs' I-485

11  applications, the pace required to complete that process is committed to their discretion.[2]  *See Li,*

12  __F.Supp.2d ___ at \*5 .  Even accepting all of Plaintiffs' factual allegations as true, Defendants

13  have provided sufficient evidence to demonstrate that the delay results from the increased national

14  security issues and not agency inaction.  Given the myriad of concerns facing law enforcement and

15  national security in this post 9/11 world, Defendants' delay appears to be reasonable.  "What

16  constitutes an unreasonable delay in the context of immigration applications depends to a great

17  extent on the facts of the particular case."  *Gelfer v. Chertoff,* 2007 WL 902382 \* 3 (N.D. Cal.

18  2007) (internal citation and quotation omitted).  Accordingly, this Court concludes that it does not

19  presently have subject matter jurisdiction to entertain Plaintiffs' mandamus petition under § 1361

20  regarding USCIS's discretionary adjudication of Plaintiffs' I-485 applications.

21          Defendants' motion to dismiss Plaintiffs' complaint for writ of mandamus based on the

22  Court lacking subject matter jurisdiction is therefore granted without prejudice.

23  2.      Jurisdiction Under the Administrative Procedure Act

24          To invoke jurisdiction under the APA, a petitioner must show that (1) an agency had a

25  nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty.  *See*

26  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-65 (2004).  "[A] person suffering

27

28          [2]  The Court makes no determination whether a district court could ever have mandamus
    jurisdiction under § 1361 to hear a petition to compel USCIS to adjudicate an I-485 application.

1   legal wrong because of agency action, or adversely affected or aggrieved by agency action within

2   the meaning of a relevant statute, is entitled to judicial review thereof." 28 U.S.C. § 702. This

3   includes judicial review to "compel agency action unlawfully withheld or unreasonably delayed."

4   28 U.S.C. § 706(1). Plaintiffs argue that these statutes, in combination with the federal question

5   statute, 28 U.S.C. § 1331, provide jurisdiction for the Court to hear their complaint.

6       "Failures to act are sometimes remediable under the APA, but not always." *Norton v.*

7   *Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004). "[A] claim under § 706(1) can

8   proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it

9   is *required to take*." *Id*. at 64 (emphasis in original). The essential allegation, that the action is

10  "unreasonably delayed" is not a ground for jurisdiction. As the Supreme Court noted, "a delay

11  cannot be unreasonable with respect to action that is not required." *Norton*, 524 U.S. at 63, n. 1.

12  Therefore, a court only has jurisdiction to compel an agency to act within a certain time period

13  under the APA when the agency is compelled by law to act within a certain time period. *See id.*

14      Plaintiffs contend that the Court should implement a "reasonable time period" standard and

15  compel Defendants to process their naturalization applications. However, no statute or regulation

16  dictates a time period within which USCIS must act. The only governing time limit is the APA's

17  directive that agencies resolve matters within a reasonable time. *See* 5 U.S.C. § 555(b) (providing

18  that each agency shall proceed to conclude a matter presented to it with due regard for the

19  convenience and necessity of the parties and within a reasonable time). This regulation clearly

20  affords wide discretion to USCIS in matters relating to the pace of the adjudication of I-485

21  applications. Plaintiffs have failed to identify any statute or regulation requiring the FBI and/or

22  USCIS to complete their name checks in any period of time, reasonable or not. Therefore, the

23  Court declines Plaintiffs' invitation to judicially impose new heightened requirements on the

24  administrative agency charged with adjudication of naturalization applications.

25      The Court further concludes that 8 U.S.C. 1252(a)(2)(B)(ii), which precludes district courts

26  from reviewing any discretionary act of USCIS, precludes this Court from reviewing whether

27  Defendants have adjudicated Plaintiff's I-485 application within a reasonable period of time under

28  the APA. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' complaint for

1   review under the APA for lack of subject matter jurisdiction.

2

3          3.       Jurisdiction Under Declaratory Judgment Act

4          Title 28 U.S.C. § 2201 (the DJA) states that "any court of the United States, upon the filing

5   of an appropriate pleading, may declare the rights and other legal relations of any interested party

6   seeking such declaration, whether or not further relief is or could be sought."  Although the DJA

7   enlarged the range of remedies available in federal courts, it did not extend federal courts'

8   jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  The DJA

9   does not establish a new basis for jurisdiction in the federal courts, but merely establishes a new

10  remedy, available in cases in which jurisdiction otherwise exists.  *Lear Siegler, Inc. v. Adkins*, 330

11  F.2d 595, 599 (9th Cir. 1964).  Since the Court has previously concluded that it does not presently

12  have either mandamus jurisdiction or jurisdiction under the APA, the DJA does not confer

13  jurisdiction.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' complaint for

14  review under the DJA for lack of subject matter jurisdiction.

15         4.       Conclusion

16         The Court concludes that it does not have subject matter jurisdiction to hear Plaintiffs' suit

17  under a writ of mandamus pursuant to 28 U.S.C. § 1361, the APA, or the DJA.  Accordingly, the

18  Court grants Defendants' motion to dismiss Plaintiffs' entire suit.

19         Because the Court concludes it lacks mandamus jurisdiction based on the declaration of

20  Wendy S. Clark stating that Plaintiffs' I-485 applications are delayed pending the completion of

21  required security checks for Plaintiff Dong Liu, the motion is granted without prejudice.

22  C.     Failure to State a Claim

23         Since the Court has concluded that it lacks subject matter jurisdiction to hear Plaintiffs'

24  case, it declines to address whether Plaintiffs' complaint should be dismissed for failure to state a

25  claim upon which relief may be granted.

26

27

28

1

2                                  **III.    CONCLUSION**

3            For the reasons discussed, the Court **GRANTS WITHOUT PREJUDICE** Defendants'

4    motion to dismiss for lack of subject matter jurisdiction.

5    **IT IS SO ORDERED.**

6
     DATED:  April 30, 2007
7

8    _____
                                  Hon. Roger T. Benitez
9                                 United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       - 11 -                            07CV0005  BEN (WMC)